FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BENITO JULIAN LUNA,
*Petitioner-Appellant*,

v.

SCOTT KERNAN,
*Respondent-Appellee.*

No. 12-17332

D.C. No.
2:04-cv-00627-MCE-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
November 19, 2014—San Francisco, California

Filed April 28, 2015

Before: Ronald M. Gould, Paul J. Watford,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Watford

# SUMMARY[*]

## Habeas Corpus

The panel vacated the district court's judgment dismissing as time-barred a state prisoner's federal habeas petition and remanded in a case in which the prisoner contends that his lawyer's misconduct provides a basis for equitable tolling of the statute of limitations.

The panel held that the prisoner's counsel's actions represent egregious professional misconduct amounting to an extraordinary circumstance that prevented the prisoner from filing his federal habeas petition on time, where counsel voluntarily dismissed for no good reason the prisoner's *pro se* habeas petition containing exhausted and unexhausted claims, misled the prisoner to believe that a fully exhausted federal petition would be filed "shortly," missed the one-year deadline for filing a new petition, and led the prisoner to believe for another six-plus years that litigation of his federal petition was moving toward a hearing on the merits. The panel wrote that this court's cases holding that egregious attorney misconduct may serve as a basis for equitable tolling, even if the misconduct falls short of abandonment, remain good law.

The panel remanded for the district court to determine in the first instance, after conducting an evidentiary hearing if necessary, whether the prisoner diligently pursued his rights through the date of filing.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Barry Morris (argued), Walnut Creek, California, for Petitioner-Appellant.

Laura Wetzel Simpton (argued), Deputy State Attorney General; Kamala D. Harris, Attorney General; Michael P. Farrell, Senior Assistant Attorney General; Carlos A. Martinez, Supervising Deputy Attorney General; Jamie A. Scheidegger, Deputy Attorney General, California Department of Justice, Sacramento, California, for Respondent-Appellee.

**OPINION**

WATFORD, Circuit Judge:

Benito Luna is a California state prisoner serving a life sentence for first-degree murder and attempted robbery. He filed a petition for writ of habeas corpus in federal court more than six years after the statutory filing deadline had passed. To avoid the time bar, he invokes the doctrine of equitable tolling, which allows a court to suspend the running of the statute of limitations in certain circumstances. In this case, Luna contends that his lawyer's professional misconduct provides a basis for equitable tolling. We are asked to decide whether the district court correctly rejected that contention.

I

Because claims for equitable tolling are inherently fact-intensive, we must begin with a fairly detailed description of the facts underlying Luna's claim.

Luna's state-court convictions became final on December 30, 2003. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Luna had one year from that date to file his federal habeas petition, subject to statutory tolling for any period during which a "properly filed" application for state post-conviction relief was pending. 28 U.S.C. § 2244(d)(2). Luna filed a *pro se* federal habeas petition well ahead of time, on March 29, 2004. He filed the petition *pro se* because the Constitution does not grant prisoners a right to appointed counsel in post-conviction proceedings, *see Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007), and Luna could not afford to hire a lawyer on his own. Magistrate judges have the discretion, however, to appoint counsel for indigent state prisoners like Luna whenever the judge "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

The magistrate judge assigned to Luna's case determined that, given the complexity of the legal issues involved, the interests of justice required appointment of counsel. Ordinarily, that's a good thing for someone in Luna's shoes. "Sadly" though, as the magistrate judge later remarked, in this case Luna "may have been better off without counsel."

Luna's appointed counsel, Joseph Wiseman, assumed his duties on June 7, 2004. The representation began well enough. At a status conference held on July 15, 2004, the magistrate judge agreed to stay Luna's federal habeas petition and hold it in abeyance so that Luna could complete the exhaustion process in state court. Only one of the claims presented in Luna's *pro se* petition had been fully exhausted, which meant Luna would need to present the remaining claims to the California courts before the district court could consider them. This stay-and-abeyance procedure would

have allowed Luna to return to state court to complete the exhaustion process while preserving the timely filing date of his original *pro se* petition.

Luna had started the exhaustion process even before Wiseman's appointment. On April 1, 2004, he filed a *pro se* habeas petition in the state trial court raising each of the unexhausted claims. The state court denied that petition on May 6, 2004. To complete the exhaustion process, Wiseman needed to promptly file a habeas petition raising the same claims in the California Court of Appeal and, if that court denied relief, file essentially the same petition in the California Supreme Court.

Rather than proceed immediately with those tasks, Wiseman returned to federal court. On August 12, 2004, despite the magistrate judge's earlier agreement to stay proceedings in federal court while Luna exhausted his claims in state court, Wiseman filed a motion requesting voluntary dismissal of Luna's *pro se* federal habeas petition. Wiseman sent Luna a copy of the motion the same day. Wiseman's motion stated that *all* of Luna's claims remained unexhausted, a fact that, if true, might have justified dismissal of the petition and precluded a stay and abeyance. *See Rhines v. Weber*, 544 U.S. 269, 275–77 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). But Wiseman was wrong—one of the claims raised in Luna's *pro se* petition had been fully exhausted, so a stay was available. Nonetheless, because motions for voluntary dismissal are automatically granted, *see* Fed. R. Civ. P. 41(a), the magistrate judge dismissed Luna's *pro se* petition without prejudice and directed the clerk of court to close the case. The clerk did so on September 14, 2004.

On September 28, 2004, Wiseman took the next step toward completing the exhaustion process by filing a habeas petition in the California Court of Appeal. Why it took Wiseman more than three months from the date of his appointment to accomplish that task isn't apparent, as Wiseman did little more than retype, with minor edits, the text of the *pro se* petition Luna had filed in the state trial court. The Court of Appeal summarily denied the petition on October 7, 2004.

To complete the exhaustion process, Wiseman's next step should have been to file, without delay, a habeas petition raising the same claims in the California Supreme Court. For reasons that are hard to discern, Wiseman failed to do that. (He did not end up filing a petition in the California Supreme Court until more than two years later.) Meanwhile, because Wiseman did not timely file either the state Court of Appeal petition or the California Supreme Court petition, AEDPA's statute of limitations continued to run, with the 1-year deadline for filing Luna's federal habeas petition set to expire on February 14, 2005. (This is the date the parties and the district court calculated, which we will adopt for purposes of this decision.)

On January 25, 2005, approximately three weeks before AEDPA's 1-year statute of limitations expired, Wiseman responded to a letter from Luna asking, "is there any response from the federal courts based on my case?" Wiseman wrote back: "Please note that my law clerk has recently finished a draft of a fully exhausted federal Writ of habeas Corpus. We intend to file it shortly, and, of course, I will send you a copy." Despite this assurance, Wiseman did not file Luna's federal habeas petition shortly afterward. He did not file it for another six-plus years.

Wiseman continued to serve as Luna's counsel throughout that lengthy interval, patiently responding to Luna's inquiries about the status of the case and providing updates on how the case was progressing. For example, in August 2005, some six months after AEDPA's statute of limitations had already expired, Wiseman wrote to Luna "to respond to your letters and to provide you with an update on your case." Wiseman began by stressing that they had a long road ahead of them: "Habeas corpus litigation is very complex, . . . and the process usually takes several years to finish." Wiseman then summarized where things stood:

> The status of your case is as follows: I moved to dismiss the original federal petition that you filed because the claims were not exhausted. That is, the state courts did not have an opportunity to rule on the claims that you raised in the federal petition. Exhaustion is mandatory, and the federal court is not allowed to rule on a claim that has not been exhausted. Thereafter, I filed on your behalf in the California Court of Appeal, Third Appellate Division a state Petition for Writ of Habeas Corpus. The Court of Appeal denied the petition (this happens to most petitions filed in that court) on October 7, 2004. In order to fully exhaust your claims, however, I must file on your behalf a Petition for Writ of Habeas Corpus with the California Supreme Court.

Wiseman closed by stating:

> I will send you a Petition for Writ of
> Habeas Corpus for your signature. After you
> sign it, please return it to me. I will file it
> with the California Supreme Court. In the
> meantime, I hope this letter has answered
> some of your questions. Please feel free to
> call me collect or write if you have any
> additional questions or comments.

Because Wiseman's letter made no mention of a federal
habeas petition having been filed in late January, Luna could
have inferred that no such filing had occurred. However,
Wiseman continued to assure Luna that everything was on
track and that they would soon be returning to federal court.
A few months after sending the letter quoted above, Wiseman
responded in November 2005 to another letter from Luna.
Wiseman wrote:

> This letter is in response to your letter to
> me dated November 11, 2005. I will have
> your Petition for Habeas Corpus that I will file
> on your behalf in the California Supreme
> Court finished soon. Once it is finished, I will
> mail it to you for your signature. I anticipate
> that the California Supreme Court will
> summarily deny the petition—the Court does
> this routinely.

> After the Supreme Court acts on your
> petition, we will be able to return to federal
> court with a fully exhausted federal Petition
> for Writ of Habeas Corpus. I intend to ask the
> federal judge to review, among other things,
> the legality of the "confessions." However, as

> I mentioned in an earlier letter, in most cases, the federal judge defers to what was already decided by the state court judges. There are exceptions to this rule, which I do not want to address in this letter. In any event, at the appropriate time, I will ask the federal judge to hold an evidentiary hearing on the matter.

For reasons that are unclear, despite promising in November 2005 that he would have Luna's California Supreme Court petition finished "soon," Wiseman did not file it until February 28, 2007. The California Supreme Court denied it as untimely on July 18, 2007.

Although all of Luna's claims were fully exhausted at that point, Wiseman did not promptly file a habeas petition on Luna's behalf in federal court, as one might have expected. For reasons that once again are unclear, Wiseman did not file Luna's federal habeas petition until almost four years later, in June 2011. Throughout that period, Luna remained in regular contact with Wiseman. The two continued to correspond by letter, as they had in the past, and it is clear that they spoke by telephone as well, although the record as it stands now does not tell us anything about the frequency or subject matter of those calls. We do not know whether Luna ever inquired about the reasons for the long delay, or whether he expressed concern about the timeliness of his return to federal court. We do know that Wiseman had previously assured Luna that his claims would eventually be heard on the merits, with the caveat that federal habeas litigation can take years to complete.

Wiseman finally filed Luna's federal habeas petition on June 3, 2011. We cannot be sure why Wiseman believed he

could wait until 2011 to file the petition, but the limited record before us sheds some light on the matter. Wiseman apparently believed that by "amending" Luna's 2004 *pro se* petition he could avoid any potential time bar because the "amended" petition would relate back to the timely filed *pro se* petition. When Wiseman filed Luna's federal habeas petition in June 2011, he styled it as an "Amended Petition for Habeas Corpus" and attempted to file it under the same case number originally assigned to Luna's *pro se* petition. Because Wiseman had voluntarily dismissed Luna's *pro se* petition, however, that case had long since been closed. As a result, there was no pending petition to which the "amended" petition could relate back. *See Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir. 1999).

The magistrate judge immediately spotted this problem and issued an order to show cause why the newly filed petition should not be dismissed as time-barred. Wiseman responded by requesting that the court appoint new counsel for Luna, candidly acknowledging that Luna might wish to seek equitable tolling on the basis of Wiseman's handling of the case. The magistrate judge granted the motion and appointed new counsel to represent Luna.

Luna's new counsel argued that the 1-year statute of limitations should be equitably tolled due to Wiseman's professional misconduct. In support of his motion, Luna's counsel submitted some of the letters exchanged between Wiseman and Luna. The magistrate judge did not hold an evidentiary hearing, but he did order Luna's counsel to submit, for the court's *in camera* review, Wiseman's entire correspondence file with Luna. After reviewing those materials, the magistrate judge concluded that the letters originally submitted by counsel were the only ones relevant

to the equitable tolling analysis. The remaining letters were not made part of the record and have not been reviewed by counsel for the State.

The magistrate judge concluded that Luna had not met his burden of proving entitlement to equitable tolling. The district court adopted the magistrate judge's findings and conclusions without modification and granted the State's motion to dismiss Luna's habeas petition as time-barred. The court granted Luna a certificate of appealability on the issue of whether Luna is entitled to equitable tolling.

II

A petitioner who seeks equitable tolling of AEDPA's 1-year filing deadline must show that (1) some "extraordinary circumstance" prevented him from filing on time, and (2) he has diligently pursued his rights. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The district court held that Luna had not shown extraordinary circumstances and denied Luna's claim for equitable tolling on that basis. Whether extraordinary circumstances exist on a given set of facts is a question of law, so we review the district court's ruling *de novo*. *Gibbs v. LeGrand*, 767 F.3d 879, 884 (9th Cir. 2014); *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011) (per curiam). We conclude that Luna has shown extraordinary circumstances, but we must remand for the district court to address diligence in the first instance on a more fully developed record.

A

Luna contends that Wiseman's mistakes in the course of representing him constitute extraordinary circumstances. Not

all attorney mistakes qualify as a basis for equitable tolling. Courts have held that run-of-the-mill mistakes by one's lawyer that cause a filing deadline to be missed do not rise to the level of extraordinary circumstances. *See, e.g.*, *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (miscalculating due date); *Sandvik v. United States*, 177 F.3d 1269, 1271–72 (11th Cir. 1999) (filing by ordinary mail shortly before deadline expired). Mistakes of this sort, which amount to nothing more than "garden variety" negligence, are deemed too routine and unremarkable to warrant equity's intervention. *Holland*, 560 U.S. at 651–52. However, acts or omissions that transcend garden variety negligence and enter the realm of "professional misconduct" may give rise to extraordinary circumstances if the misconduct is sufficiently egregious. *Id.* at 651; *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003). The question here is whether Wiseman's actions represent egregious professional misconduct or mere garden variety negligence.

Let's begin with Wiseman's decision to dismiss Luna's *pro se* petition. Before Wiseman's appointment, through his own diligent efforts, Luna had managed to protect himself against the risk of missing AEDPA's 1-year deadline by filing a timely petition. True, a number of the claims Luna alleged had not been exhausted, but Wiseman initially avoided the need to dismiss the petition by securing a stay and abeyance. At that point, Luna reasonably expected Wiseman to help him complete the state-court exhaustion process as expeditiously as possible so that Luna's claims could be heard on the merits in federal court.

Instead of advancing his client's interests, Wiseman affirmatively undermined them by voluntarily dismissing the petition for no good reason. Dismissing the petition might

have made sense had Wiseman been planning to add entirely new, unrelated claims, in order to avoid AEDPA's strict limitations on the filing of second or successive petitions. *See* 28 U.S.C. § 2244(b). But as far as the record discloses, Wiseman had no such plans; he dismissed the petition because he believed (erroneously) that all of Luna's claims were unexhausted. If, as seems apparent, Wiseman planned to do nothing more than amend the petition to add additional facts and legal analysis in support of the claims already alleged, there was no need to dismiss the petition outright. Wiseman could have asked for leave to amend the petition later, while preserving the timely filing date of Luna's *pro se* petition. *See Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013); *Anthony v. Cambra*, 236 F.3d 568, 576–77 (9th Cir. 2000). Dismissing Luna's *pro se* petition thus offered no strategic benefit and carried a monumental downside risk: If for whatever reason Wiseman failed to file Luna's federal habeas petition within the time allowed, Luna would forfeit his right to federal review altogether.

Voluntarily dismissing a timely federal habeas petition, standing alone, is not necessarily egregious professional misconduct. After all, so long as Wiseman had completed the exhaustion process and refiled Luna's federal petition before AEDPA's limitations period expired, probably the most one could say is no harm, no foul. But the actions Wiseman took following dismissal compounded the error he had already made. Having exposed his client to the risk of default where none existed before, Wiseman assumed a duty of the highest order to ensure that he filed a fully exhausted petition on Luna's behalf within the time allowed. Failing to fulfill that duty was bad enough. Worse still, in response to an inquiry from Luna shortly before the statute of limitations expired, Wiseman misled Luna to believe that a fully exhausted

federal habeas petition would be filed "shortly." Had Luna been informed of the truth—that the filing deadline was three weeks away and that Wiseman would not be filing a petition within that timeframe—Luna could have filed a *pro se* petition on his own, as he had already done once before, prior to Wiseman's appointment.

A number of circuits, including ours, have held that affirmatively misleading a petitioner to believe that a timely petition has been or will soon be filed can constitute egregious professional misconduct. *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011); *Dillon*, 642 F.3d at 363–64; *Downs v. McNeil*, 520 F.3d 1311, 1322–23 (11th Cir. 2008); *Fleming v. Evans*, 481 F.3d 1249, 1256–57 (10th Cir. 2007); *United States v. Martin*, 408 F.3d 1089, 1094–95 (8th Cir. 2005); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). Wiseman engaged in precisely such misconduct here. But the misconduct in this case extends beyond an isolated misleading statement. Even after wrongfully dismissing Luna's original *pro se* petition and then missing the 1-year deadline for filing a new petition, Wiseman led Luna to believe for another six-plus years that litigation of his federal habeas petition was moving forward, albeit slowly, toward a hearing on the merits. In truth, however, nothing had been filed in federal court and the statute of limitations had long since expired.

Wiseman's actions in this case, considered collectively, go beyond mere garden variety negligence. Attorney mistakes that warrant the label "garden variety"—like miscalculating a filing deadline—are the sorts of mistakes that, regrettably, lawyers make all the time. They are mistakes made routinely enough that they're regarded as one of the risks petitioners typically assume when relying on

counsel to litigate a case, rather than as an extraordinary circumstance warranting equitable intervention. Courts do not recognize run-of-the-mill mistakes as grounds for equitable tolling because doing so "would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Lawrence*, 549 U.S. at 336. No such concerns arise by granting equitable tolling on the basis of Wiseman's misconduct. His actions were "utterly deficient and unprofessional," *Doe*, 661 F.3d at 1012, and, unlike run-of-the-mill mistakes, were "far enough outside the range of behavior that reasonably could be expected" in the typical case that they may be regarded as "extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003).

The State's most forceful counter-argument is that, under traditional agency principles, Luna should be bound by the actions of his lawyer, however egregious they may have been. According to the State, a claim for equitable tolling may be predicated on an attorney's misconduct only if the misconduct severs the agency relationship, as in cases of attorney abandonment. The State acknowledges that the cases cited earlier foreclose this argument, as they authorize equitable tolling based on a range of attorney misconduct not limited to abandonment. However, the State contends that those cases have been overruled by the Supreme Court's decision in *Maples v. Thomas*, 132 S. Ct. 912 (2012).

We do not share the State's view, although at least one other circuit does. *See Cadet v. Florida Dep't of Corrections*, 742 F.3d 473, 477–82 (11th Cir. 2014). In *Maples* the Court discussed the agency principles the State urges us to apply here, but it did so in the context of applying the procedural default doctrine, not the equitable tolling doctrine. The Court

reaffirmed the general rule established in *Coleman v. Thompson*, 501 U.S. 722 (1991): If a lawyer's actions during the course of the agency relationship result in a state-court procedural default, the petitioner is bound by those actions—even if they are negligent—and cannot assert them as "cause" to excuse the default. *Maples*, 132 S. Ct. at 922. By the same token, the Court held, if the lawyer's actions occur after the agency relationship has been severed, as in cases of attorney abandonment, the petitioner is not bound by those actions and may assert them as cause to excuse a default. *Id.* at 924. In a footnote on which the State places heavy reliance, the Court appeared to suggest that the same agency principles also apply in the equitable tolling context.[1] That footnote could be read to suggest that, absent some agency-severing event such as abandonment, a petitioner will be bound by his lawyer's acts or omissions in both the procedural default and equitable tolling contexts.

In our view, it remains unclear whether the Court intended to hold in *Maples* that attorney misconduct falling short of abandonment may no longer serve as a basis for equitable tolling. We would be surprised to find that holding lurking in a footnote to an opinion addressing an entirely different doctrine, particularly given what the Court had said less than two years earlier in *Holland*. In that case, the Court appeared to hold that professional misconduct falling short of abandonment *could* support a claim of equitable tolling, as

---

[1] The footnote reads: "*Holland v. Florida*, 560 U.S. — (2010), involved tolling of a federal time bar, while *Coleman v. Thompson*, 501 U.S. 722 (1991), concerned cause for excusing a procedural default in state court. We see no reason, however, why the distinction between attorney negligence and attorney abandonment should not hold in both contexts." *Maples*, 132 S. Ct. at 923 n.7 (citation omitted).

most circuits at the time, including ours, had also held. *See Holland*, 560 U.S. at 651–52. The Court rejected as "too rigid" the rule applied by the Eleventh Circuit, under which "even attorney conduct that is 'grossly negligent' can never warrant tolling absent 'bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part.'" *Id.* at 649. The Court held that the Eleventh Circuit's rule "fails to recognize that, at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Id.* at 651. The Court recognized that the rule it was adopting for equitable tolling cases differed from the rule announced in *Coleman*, but stated that the difference was justified because the procedural default doctrine implicates federalism concerns absent in the equitable tolling context. *Id.* at 650.

*Maples* did not explicitly overrule *Holland*, and we lack the authority to hold that *Maples* did so implicitly. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). As a three-judge panel, we also lack the authority to declare that our own precedent has been overruled by *Maples*, unless our cases are "clearly irreconcilable" with *Maples*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). That test has not been met here. Our circuit's equitable tolling precedent tracks the standard the Court adopted in *Holland*. *See Doe*, 661 F.3d at 1011–12; *Spitsyn*, 345 F.3d at 800. And, as just noted, it's decidedly unclear to what extent, if any, *Maples* abrogated *Holland*'s reasoning on the question whether attorney misconduct falling short of abandonment may qualify as an extraordinary circumstance for equitable tolling purposes. For now, then, our cases holding that egregious attorney misconduct of all stripes may serve as a basis for equitable tolling remain good law.

Having concluded that Wiseman's professional misconduct constitutes an extraordinary circumstance, we must next determine whether that misconduct prevented Luna from filing his federal habeas petition on time (what we have sometimes referred to as the "causation" requirement). *See Spitsyn*, 345 F.3d at 799. That requirement is easily satisfied here. But for Wiseman's misconduct, Luna would have filed his federal habeas petition on time. We know that to be true because Luna *had* filed his petition on time before Wiseman ever arrived on the scene. Wiseman's misconduct consisted of undoing Luna's diligent work and then misleading Luna to believe for six-plus years that everything was proceeding on track in federal court when that was not the case. Nothing more need be shown to demonstrate causation in this context.

B

The magistrate judge did not thoroughly analyze whether Luna had diligently pursued his rights because the judge concluded that Luna had not shown extraordinary circumstances. With respect to diligence, the magistrate judge stated only that Luna "could not have done more to ensure a timely filing once his attorney was appointed." Because the magistrate judge focused on the period before AEDPA's 1-year statute of limitations expired in 2005, we are unable to tell whether he also found that Luna had diligently pursued his rights after that time. We cannot make that determination in the first instance (a task we would be reluctant to undertake in any event given the fact-intensive nature of the inquiry) because the record is insufficiently developed.

Luna contends that the current record establishes reasonable diligence because it shows that, throughout the

relevant time period, he remained in regular contact with Wiseman and asked for and received updates on the status of his case. Under some circumstances, communicating with one's lawyer and relying on the lawyer's assurances that everything is proceeding apace can suffice to demonstrate diligence. In *Doe v. Busby*, 661 F.3d 1001 (9th Cir. 2011), for example, we held that Doe had shown reasonable diligence by continuing to urge his attorney to file a federal habeas petition over a period of three years, even after learning that his attorney had blown the original filing deadline. Throughout that period, the attorney told Doe that a petition could not be filed until new evidence was discovered but assured Doe that the search for such evidence was ongoing. *Id.* at 1013–14. Nothing alerted Doe that he needed to take further action to protect his rights until the attorney abruptly resigned. "Untrained in the technicalities of habeas law and incarcerated, Doe was in no position to question a plausible explanation for the attorney's delay or to observe the thoroughness of the attorney's supposedly ongoing investigation for evidence." *Id.* at 1014. We concluded that a reasonable person in the petitioner's shoes, "if asked about the status of his or her lawsuit, would be justified in replying, 'My lawyer is handling it.'" *Id.* at 1015.

To establish diligence here, Luna must show not only that he kept in touch with Wiseman, but also that it was reasonable for him to continue relying on Wiseman's assurances about the progress of his case. *See id*. The record before us contains only three letters from Wiseman to Luna after the statute of limitations expired, and we do not have declarations from Luna or Wiseman describing what assurances Wiseman may have provided Luna during that period, whether in writing or by telephone. We cannot say whether Luna's reliance on Wiseman was reasonable—or

whether circumstances should have alerted Luna earlier that he needed to take additional action to protect his rights—without knowing more about the nature of the communications between Luna and Wiseman over the more than six years in question.

Nor can we say, as the State urges, that the existing record conclusively establishes that Luna was *not* diligent. We acknowledge that the delay involved here—more than six years—is considerable. The State contends that, given the length of the delay, at some point Luna should have realized that Wiseman was taking too long to file and that Luna therefore needed to take action himself to protect his rights. Other than the sheer length of the delay, however, we see nothing in the existing record to indicate that Luna should have become aware of the need to take action. There is no indication, for example, that Luna ever learned that Wiseman's misconduct had allowed the AEDPA statute of limitations to expire. For all we know, Wiseman may have assured Luna that AEDPA's time limitations were of no concern, based on Wiseman's erroneous understanding of when an amended petition could relate back to an earlier-filed petition. Relying on that advice from a trained lawyer would be just as reasonable as relying on the advice the petitioner in *Doe* received from his lawyer, who told Doe that even a concededly blown filing deadline was of no concern because a late petition could be filed once they discovered new evidence. *Doe*, 661 F.3d at 1013–14. Thus, unless we were prepared to say that six-plus years is simply too long of a delay in these circumstances—no matter what the reason—we could not rule in the State's favor without first remanding to the district court for further development of the record. As we did in *Doe*, we decline to impose any such

rigid cut-off based on the "passage of time alone." *Id.* at 1015.

## III

We address one final issue to assist the district court on remand, relating to the time period during which Luna must show that he exercised reasonable diligence.

In *Gibbs v. LeGrand*, 767 F.3d 879 (9th Cir. 2014), we adopted the "stop clock" approach to analyzing claims for equitable tolling. Under that approach, the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier. *Id.* at 891–92. In that sense, the stop-clock approach to equitable tolling works in much the same way statutory tolling does under 28 U.S.C. § 2244(d)(2): Any period during which both extraordinary circumstances and diligence are shown does not count toward the statute of limitations, just as any period during which a properly filed application for state post-conviction relief is pending does not count toward the statute of limitations. *See Wood v. Milyard*, 132 S. Ct. 1826, 1831 & n.3 (2012). To determine whether a petition is timely, we ask whether it was filed within the 1-year limitations period after all periods of tolling are subtracted from the count.

Under a pure stop-clock approach, a petitioner needs to show diligence only during the period he seeks to have tolled—*i.e.*, the period during which the extraordinary circumstances prevented timely filing. There is no need to show diligence after the extraordinary circumstances have

ended. The clock remains stopped for the period during which extraordinary circumstances existed and the petitioner remained diligent, and the timeliness of the petition is assessed accordingly. That is the rule followed in the Second Circuit, which has adopted the stop-clock approach to analyzing claims for equitable tolling. *See Harper v. Ercole*, 648 F.3d 132, 136–37 (2d Cir. 2011).

One of our earlier equitable tolling precedents, however, requires a petitioner to show diligence through the time of filing, even after the extraordinary circumstances have ended. In *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003), we held that the petitioner had shown extraordinary circumstances where his attorney, although retained nearly a full year ahead of AEDPA's filing deadline, ignored all of Spitsyn's phone calls and letters, never filed a petition on Spitsyn's behalf, and then delayed returning Spitsyn's files until after the statute of limitations had expired. *Id.* at 798–99, 801. We remanded for the district court to determine whether Spitsyn had been reasonably diligent. In particular, we directed the district court to determine whether Spitsyn had exercised reasonable diligence during the 174 days that elapsed between the time Spitsyn received his files back (the point at which the extraordinary circumstances ended) and the date Spitsyn filed his own *pro se* petition. *Id.* at 801–02. Under the pure stop-clock approach, there would have been no need for this post-extraordinary circumstances diligence inquiry: Once Spitsyn received his files back and the clock began ticking again, he would have been entitled to use whatever time remained left on the clock before filing.

At some point, our circuit may need to decide whether it makes sense to follow the stop-clock approach and at the same time impose a diligence-through-filing requirement. If

the objective of the stop-clock approach is to give petitioners one full year of unobstructed time to prepare a federal habeas petition, a separate diligence-through-filing requirement appears to thwart that objective. *See Lott v. Mueller*, 304 F.3d 918, 926–27 (9th Cir. 2002) (McKeown, J., concurring). However, under current circuit law, we must apply both the diligence-through-filing requirement imposed by *Spitsyn* and the stop-clock approach adopted in *Gibbs*.

To prevail on remand, then, Luna will need to show that he remained diligent through filing—*i.e.*, through June 3, 2011. If he makes that showing, his petition will also be timely under the stop-clock approach. The extraordinary circumstances spawned by Wiseman's misconduct arose before the statute of limitations expired, and they continued uninterrupted through Wiseman's filing of the petition on June 3, 2011. If Luna shows reasonable diligence throughout that period, the clock will remain stopped through the date of filing, rendering his petition timely.

\*       \*       \*

We vacate the district court's judgment dismissing Luna's federal habeas petition and remand for the district court to determine in the first instance, after conducting an evidentiary hearing if necessary, whether Luna diligently pursued his rights through the date of filing, June 3, 2011. *See Sossa v. Diaz*, 729 F.3d 1225, 1237 & n.13 (9th Cir. 2013); *Spitsyn*, 345 F.3d at 802. That determination will dictate whether Luna's petition should be deemed timely.

Costs are awarded to the appellant.

**VACATED AND REMANDED.**