KELLY, Circuit Judge, dissenting. After Roger Coulter’s conviction became final, he filed a petition seeking state post-conviction relief, which remained pending in the state trial court for almost eight years. That petition was denied on November 8, 1999, but, because he was not properly notified, Coulter did not effectuate his appeal until February 22, 2000—a period of 106 days during which the federal statute of limitations was not tolled.[4] After granting Coulter’s belated motion and reinstating his appeal, the Arkansas Supreme Court issued its mandate, denying Coulter relief on December 19, 2000. Coulter filed his federal habeas petition on October 1, 2001, 286 days later. Therefore, based on the calculation of 392 accumulated and untolled days, Coulter’s petition was twenty-seven days late. In September 2009, almost eight years after Coulter filed his federal habeas petition, the district court requested briefing to address various procedural matters, including the statute of limitations. On October 29, 2009, the state filed its “First Amended Response to Petitioner’s Second Amended Petition,” raising for the first time the issue of whether Coulter’s 2001 petition was filed outside the one-year statute of limitations. After an evidentiary hearing and briefing from the parties, the district court denied Coulter’s petition as untimely without addressing the merits. In my view, Coulter’s petition satisfies the requirements for equitable tolling, and I would reverse the judgment of the district court and remand the petition for a decision on the merits. See English, 840 F.3d at 958 (“We review a denial of equitable tolling de novo, but review underlying fact findings for clear error.”). A habeas corpus petitioner is entitled to equitable tolling on the basis of a showing “ ‘(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ and prevented timely filing.” Holland, 560 U.S. at 649, 130 S.Ct. 2549 (quoting Pace, 544 U.S. at 418, 125 S.Ct. 1807). The district court determined that Coulter had satisfied the second prong because “the [cjircuit [ejourt [cjlerk’s failure to send ... notice to the proper address constitutes an extraordinary delay beyond [Coulterj’s control.” I agree that these facts constitute an extraordinary circumstance that stood in the way of Coulter’s timely filing his petition. See Earl, 556 F.3d at 723-24 (“[A] significant state created delay in providing a prisoner with notice that his state judgment of conviction has become final amounts to an extraordinary circumstance beyond a prisoner’s control which can equitably toll the AEDPA statute of limitations if the prisoner has pursued his rights with diligence.”). The district court determined, however, that Coulter had not “diligently pursued his rights during the 286 days that elapsed between December 19, 2000 and October 1, 2001.”[5] On that basis, the court denied Coulter’s petition, finding him ineligible for equitable tolling. However, I do not believe' that the 286 days are the relevant period during which diligence should be assessed. Rather—under facts such as these—I would apply what has been called the “stop-clock approach.”[6] See Harper, 648 F.3d at 139-42; cf. Holland, 560 U.S. at 649-50, 130 S.Ct. 2549 (“In emphasizing the need for ‘flexibility,’ for avoiding ‘mechanical rules,’ we have followed a tradition in which courts of equity have sought to ‘relieve hardships which, from time to time, arise from a hard and fast adherence’ to more absolute legal- rules, which, if strictly applied, threaten the ‘evils of archaic rigidity.’ ” (citations omitted)); Luna v. Kernan, 784 F.3d 640, 651 (9th Cir. 2015) (citing Gibbs v. Legrand, 767 F.3d 879, 891-92 (9th Cir. 2014) (discussing the adoption of a stop-clock approach)). Under the stop-clock approach, the “clock” (the one-year statute of limitations) is “stopped” (tolled) during the extraordinary circumstance so long as the petitioner demonstrates diligence during the time he is seeking to have tolled. The petitioner is not additionally required to demonstrate diligence during the untolled period that follows. See Luna, 784 F.3d at 651 (explaining that, under this approach, “[a]ny period during which both extraordinary circumstances and diligence are shown does not count toward the statute of limitations, just as any period during which a properly filed application for state post-conviction relief is pending does not count toward the statute of limitations” (citing Wood, 566 U.S. at 468-69 & n.3, 132 S.Ct. 1826)). Such an approach is consistent with the Supreme Court’s recognition that “AEDPA’s limitations period is not particularly long,” Holland, 560 U.S. at 647, 130 S.Ct. 2549, and the goal of giving “state prisoners ... the full year allowed them by Congress to consider and prepare their federal habeas petitions.” Harper, 648 F.3d at 140 (quoting Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001)); see also Luna, 784 F.3d at 651 (“If the objective of the stop-clock approach is to give petitioners one full year of unobstructed time to prepare a federal habeas petition, a separate diligence-through-filing requirement appears to thwart that objective.”). What diligence is reasonable must be assessed in light of the specific extraordinary circumstance that occurred. Cf. Holland, 560 U.S. at 650, 130 S.Ct. 2549 (quoting Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) for the proposition that “the exercise of a court’s equity powers ... must be made on a case-by-case basis”). In this case, I do not see how Coulter’s diligence could be viewed as anything less than reasonable, as he still believed he was waiting for a disposition from a state court and that his competent counsel would inform him of such. See Luna, 784 F.3d at 649-50 (“Under some circumstances, communicating with one’s lawyer and relying on the lawyer’s assurances that everything is proceeding apace can suffice to demonstrate diligence.”). Cpulter’s state petition had been pending for almost eight years, and it was reasonable for him to believe it might remain pending for a bit longer. Without any indication firom the state court that his petition had been resolved, Coulter was exercising reasonable diligence by continuing to wait. Cf. Holland, 560 U.S. at 650, 130 S.Ct. 2549 (“The ‘flexibility’ inherent in ‘equitable procedure’ enables courts ‘to meet new situations that demand equitable intervention and to accord all the relief necessary to correct particular injustices.’ ” (alterations omitted) (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944))) Finally, under the stop-clock approach, a petitioner still must show that the extraordinary circumstance was the cause for the failure to file the petition within the statute of limitations. See Harper, 648 F.3d at 137 (citing both Hizbullahankhamon, 255 F.3d at 76 (requiring a showing of causation) and Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (same)). Coulter has made this showing.[7] In this case, the extraordinary circumstance itself—the clerk’s failure to notify Coulter that his petition had been denied—made the one-year statute-of-limitations deadline virtually impossible to calculate with any certainty. Once he received notice, Coulter’s counsel submitted multiple filings, ultimately reviving Coulter’s state post-conviction appeal. But when the appeal was denied, it remained unclear how much time, if any, had run off Coulter’s one-year clock. Even the State believed—or “assume[d]”—that Coulter’s § 2254 petition had been timely filed, and persisted in that belief or assumption for eight years of litigation.[8] Whether Coulter’s original petition was filed within the one-year statute of limitations has proven to be a particularly difficult procedural question to answer. Throughout the majority of the proceedings, Coulter was not even aware that it was a question to ask. For the foregoing reasons, I would find equitable tolling appropriate in Coulter’s case and remand to the district court with instructions to address the merits of his petition. I respectfully dissent. . During the almost eight years that Coulter’s state petition was pending, his attorney had moved offices twice, and the state court sent the notice to the incorrect address. When the notice was returned as undeliverable, the state circuit court made no additional attempts to notify Coulter or his counsel. Coulter’s attorney finally received notice on January 25, 2000, and immediately filed a notice of appeal. However, he did not file a motion for belated appeal under Arkansas Criminal Rule of Appellate Procedure 2(e) until February 22. The analysis might differ for those twenty-eight days, during which Coulter's attorney had notice but had not filed a motion under the appropriate rule. But because tolling the period of seventy-eight days from November 8, 1999, to January 25, 2000, would bring Coulter well within the one-year statute of limitations, separate analysis of the twenty-eight-day period of time is not necessary. . "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.” Holland, 560 U.S. at 653, 130 S.Ct. 2549 (citations and internal quotation marks omitted). . The court "assum[es] for the sake of analysis that our precedent does not foreclose the 'stop-clock' approach.” Supra, at 624. I see no reason why it would. We have required, as instructed by Holland, that petitioners seeking equitable tolling demonstrate “reasonable diligence” in pursuing their appeals, but we have not addressed a circumstance where a petitioner advanced a stop-clock theory that might bring an otherwise time-barred petition within the statute of limitations. . Because proceeding in equity counsels against adherence to "absolute legal rules,” Holland, 560 U.S. at 650, 130 S.Ct. 2549, the causation analysis must also be governed by the facts of the case. Where the extraordinary circumstance lasts for a discrete period of time—rather than indefinitely, Harper, 648 F.3d at 140 (discussing and distinguishing Valverde, 224 F.3d at 134 & n.5)—the causation principle requires that the extraordinary circumstance, during which diligence was demonstrated, be the cause of the petitioner’s failure to meet the one-year deadline. In other words, whether, but for the extraordinary circumstance and the time that ran off the clock due to it, the petition would have been timely. See id. at 141 (describing Pace, 544 U.S. at 419, 125 S.Ct. 1807, where petitioner did not file in the five months after the extraordinary circumstance ended, as a situation that sim- ■ ply "reinforce[d] the adverse diligence determination for the period for which tolling was sought, [but did not] establish a distinct diligence requirement that would have rendered the petition untimely even if the state remedies has been promptly pursued”); see also id. at 138 (noting that, because the petitioner filed his petition "within the time that would have remained available to him under AED-PA” if the extraordinary circumstance had not occurred, “it cannot be argued that undue delay, rather than the identified extraordinary circumstances, caused [petitioner] to miss the original AEDPA filing deadline"). . By way of contrast, in addition to failing to show causation, the petitioner in Hizbulla-hankhamon was denied access to legal materials for twenty-two days during the one-year statute-of-limitations period, but that extraordinary circumstance created no impediment to calculating when the one-year period would end. 255 F.3d at 76.