# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50206

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2018

Lyle W. Cayce
Clerk

JESUS JAIME JIMENEZ,

    Petitioner - Appellant

v.

GARY HUNTER, Senior Warden; LORIE DAVIS, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,

    Respondents - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-420

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge: *

Jesus Jaime Jimenez appeals the district court's dismissal of his petition for a writ of habeas corpus as untimely. The district court did so after concluding equitable tolling did not apply in Jimenez's situation as his allegations—that his first postconviction attorney abandoned him seven-and-a-half months into his one-year federal habeas limitations period, that his

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50206

second postconviction attorney did not provide him his legal documents until two days before his filing deadline, and that the prison library policy compounded these obstacles—either did not amount to extraordinary circumstances or did not cause his untimely filing.

## I.

Jimenez was convicted in 2006 of engaging in organized crime. That conviction resulted in a fifty-year prison sentence. Believing his conviction was the product of a deficient trial, Jimenez hired new counsel, Nancy Barohn, to help him contest the outcome.

Jimenez lost the first challenge to his conviction in 2009, when the intermediate state court affirmed his conviction on direct appeal. The Texas Court of Criminal Appeals later denied his petition for discretionary review, handing Jimenez his second loss. Barohn opted not to continue the battle on direct appeal, allowing the ninety days to seek review from the Supreme Court to expire. On that day—August 3, 2010—Jimenez's one-year limitations period to seek federal habeas review began to run.

Barohn's efforts carried on to the collateral stage, or so Jimenez thought. Barohn informed Jimenez of the discretionary review denial in mid-August via letter. In that same letter, she asked Jimenez's permission to work on his state petition for writ of habeas corpus alongside Jimenez's trial counsel, Bob Galvan. Jimenez agreed. Barohn then suggested they all meet in early October to work on his petition.

The first sign of discord came four months later. Galvan wrote to Jimenez reassuring him the state writ was in the works and persuading him to keep him and Barohn as his attorneys. This effort was in response to complaints by Jimenez. Galvan contended that no one knew the thirty-one volume record better than the current team and warned that hiring someone

else would create substantial delays and that complaining too much may result in Barohn withdrawing.

That last warning proved prophetic. Barohn wrote to Jimenez on March 7, 2011, announcing she was withdrawing as his counsel, saying she was burned out and citing Jimenez's voluminous correspondence. This news came seven-and-a-half months into Jimenez's one-year federal habeas limitations period. Contrary to prior assurances, Barohn informed Jimenez that no work had been done on the state writ.

Jimenez promptly retained new counsel: Richard Ellison. Ellison filed Jimenez's state writ on June 21, 2011. That state filing tolled Jimenez's federal limitation period while it was being considered. 28 U.S.C. § 2244(d)(2). The ensuing denial of that writ on February 5, 2014, restarted Jimenez's limitation period. He had forty-three days to file his federal habeas petition.

Jimenez spent twenty-six of those remaining days trying to understand the state court's denial of his writ. He first learned of it on February 11, 2014—six days later—through a "white card" sent by the Texas Court of Criminal Appeals. Unable to decipher what the white card meant, he wrote to Ellison seeking clarification and guidance on next steps. llison responded seventeen days later, explaining the state writ had been denied and attaching a sparsely filled out form federal habeas petition for Jimenez to file *pro se*. Jimenez received this letter March 3, 2014. He had seventeen days to file.

Jimenez spent the next fifteen days trying to obtain his state writ petition and related materials. He wrote to Ellison the same day he received his letter to request those documents so he could complete the petition on his own. This was because, according to Jimenez, he did not have any such files from which to draw the information necessary for his federal habeas petition. Jimenez received these files on March 18, 2014. He had two days to file.

No. 15-50206

Uncertain about his filing deadline, Jimenez went to work on his federal habeas petition. Compounding Ellison's delays was the prison library's three cases, three days policy: inmates could only have three cases at a time and request new materials on three days of the week. Jimenez filed his petition on April 23, 2014, which was 34 days after his federal deadline. It raised issues concerning an alleged conflict of interest by the state trial judge and a *Brady* violation by prosecutors.

The district court dismissed the filing as untimely. It found equitable tolling was not warranted as Jimenez's allegations either did not amount to extraordinary circumstances or did not prevent him from timely filing. Looking first to Barohn's misconduct, it concluded that, regardless whether extraordinary, her actions did not cause Jimenez's untimely filing because he still had five months to file after her withdrawal. The district court then evaluated each of Ellison's misdeeds in isolation. It found each was, at most, mere negligence. The district court went on to say that "because the attorney is the prisoner's agent . . . under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." Finally, it found Jimenez did not show that access to his complete record was necessary to prepare and file his petition; something he "should have been able to [do] using his appeal briefs and [s]tate [writ], documents he should have already had access to."

We granted a certificate of appealability to authorize further review of this procedural question.

## II.

The Antiterrorism and Effective Death Penalty Act's one-year limitations period on state prisoners seeking federal habeas review is subject to equitable tolling. *Holland v. Florida,* 560 U.S. 631, 645 (2010). To obtain

4

that benefit, the petitioner must show both that he pursued habeas relief diligently and some extraordinary circumstance prevented timely filing. *Id.* at 649. The district court found no extraordinary circumstances, so did not address the diligence requirement. We review a district court's decision regarding equitable tolling for abuse of discretion, evaluating its findings of fact for clear error and its determinations of law de novo. *Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir. 2002). Determinations of law are so reviewed because a district court by definition abuses its discretion when it makes an error of law. *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002).

## A.

Jimenez first argues that the district court's importation of agency principles into the equitable tolling context was improper as the Supreme Court has expressly rejected doing that, recognizing instead that attorney error can constitute extraordinary circumstances for purposes of equitably tolling the AEDPA deadline. *Holland*, 560 U.S. at 650–52. To hold otherwise, he contends, requires finding that *Holland* was overruled just a few years later in *Maples v. Thomas*, 565 U.S. 266 (2012). *Maples* relied on agency principles to excuse *procedural default* when an attorney abandons her client but not when she is merely negligent and cites *Holland* as instructive on that issue. *Id.* at 281–82.

Whether *Maples* alters *Holland* this way is a subject of debate among the circuits. The Second Circuit has said it does, holding that *Maples* means attorney wrongdoing must rise to effective abandonment—an act that severs the agency relationship—to constitute extraordinary circumstances in the equitable tolling setting. *Rivas v. Fischer*, 687 F.3d 514, 538 n.33 (2d Cir. 2012). A divided panel of the Eleventh Circuit initially held that too. *Cadet v. Florida Dept. of Corrections*, 742 F.3d 473, 480–81 (11th Cir. 2014). But after en banc petitioning, it issued a revised opinion. 853 F.3d 1216, 1218 (11th Cir.

2017).  That opinion reiterates that attorney error, however egregious, cannot warrant equitable tolling—again relying on *Maples* and its agency rationale. *Id.* at 1226-27.  But it notes that misconduct other than abandonment may amount to extraordinary circumstances.  *Id.* at 1227.  Finally, the Ninth Circuit has said it is unclear whether the Supreme Court intended to hold in *Maples* that attorney misconduct short of abandonment can no longer serve as a basis for equitable tolling.  *Luna v. Kernan*, 784 F.3d 640, 648-49 (9th Cir. 2015).  But because *Maples* did not explicitly overrule *Holland*, it ruled that *Holland*'s holding—egregious attorney misconduct of all stripes may serve as a basis for equitable tolling—remains good law.  *Id.* at 649.

We have yet to expressly chime in[1], and we need not today.  That is because Ellison's failure to timely provide Jimenez with his legal documents was not an error arising out of Ellison's representation of Jimenez during federal habeas.  The agency principle holding a habeas petitioner generally responsible for his attorney's conduct typically involves that situation in which the attorney is acting as the petitioner's agent in filing the federal habeas petition.  *See, e.g., Riggs,* 314 F.3d at 798–800.

But Jimenez was a *pro se* federal habeas petitioner.  He conducted his own research, gathered his own materials, and filed his own petition.  Ellison's letter to Jimenez notifying him of his state writ denial confirms as much as he expressly instructs Jimenez to proceed in the federal courts *pro se*.

As the Seventh Circuit recently noted, this matters a great deal to the tolling inquiry.  *Socha v. Boughton*, 763 F.3d 674, 685–86 (7th Cir. 2014).

---

[1] *United States v. Wheaten*, 826 F.3d 843, 852–53 (5th Cir. 2016) observes that "the Supreme Court has differentiated between 'garden variety claim[s] of excusable neglect, such as a simple "miscalculation" that leads a lawyer to miss a filing deadline,' which do 'not warrant equitable tolling,' and abandonment by counsel," which does, citing both *Holland* and *Maples*.  But it does not address whether *Maples* alters *Holland*'s holding on attorney error and rejection of agency principles.

No. 15-50206

Because Ellison was not Jimenez's attorney during "the period relevant to our inquiry," "[h]is failure to [timely] turn over [Jimenez's] file [] was not garden variety neglect of a client." *Id.* at 686. Rather, it was an obstacle external to Jimenez that cannot be attributed to him under *Holland*'s standard or *Maples*'s agency rationale. *Id.* at 685–86 (noting that while "counsel's misconduct is attribut[able] to a client, [] noncounsel's conduct is not" and concluding that "Socha was without access to any of the documents pertaining to his legal proceedings *through no fault of his own.*") (emphasis added); *see also Spitsyn,* 345 F.3d 796, 801 (9th Cir. 2003) (treating lack of access to legal documents as an external obstacle and highlighting that "without the file, which [the attorney] still possessed, it seems unrealistic to expect [the petitioner] to prepare and file a meaningful petition on his own within the limitations period"); *cf. In re Wilson,* 442 F.3d 872, 875 (5th Cir. 2006) (stating that "[e]quitable tolling is appropriate when an *extraordinary factor beyond the plaintiff's control* prevents his filing on time") (internal citation omitted) (emphasis added).

Courts confronting allegations of external obstacles more aptly focus on how severely those impediments limited the petitioner's ability to timely file. *See Hardy v. Quarterman*, 577 F.3d 596, 598–99 (5th Cir. 2009) (finding the state's failure to notify petitioner of his state writ denial until six weeks after his deadline to file a federal habeas petition was extraordinary enough to warrant equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (concluding that a delay in receiving notice of the Antiterrorism and Effective Death Penalty Act did not so limit the petitioner's ability to file because there remained ample time but recognizing the result would be different "if an essential piece of information was delayed near the filing deadline"); *see also Pabon v. Mahanoy,* 654 F.3d 385, 400 (3rd Cir. 2011) ("[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the

7

universe of prisoners . . . but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period."); *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). Because agency principles do not apply to Ellison's conduct that impeded the federal habeas process, we will remand for the district court to evaluate these facts in terms of an external obstacle.

**B.**

Jimenez contends the district court also erred by misconstruing his allegation about his lack of access to his legal documents. We agree. The district court's ruling assumes Jimenez was in possession of the most important files—the writ and accompanying briefs from his state litigation. But Jimenez explicitly alleged to the contrary:

> Petitioner was in no position to . . . file his 2254 petition due to the fact that his state postconviction attorney had not forwarded him *any portion of the record.* Petitioner *did not have a copy of his 11.07 state writ application* so that he may view and determine the merits that he would be addressing in his 2254. Petitioner made numerous requests, asking that his file may be sent to him, however, he was unsuccessful and couldn't prepare his 2254 in a timely manner.

The ruling that "Jimenez should have been able to prepare his § 2254 petition using his appeal briefs and state [writ]," seemingly overlooked this allegation as nothing was cited that contradicts it. On remand, the district court should either treat Jimenez's allegation as true or hold a hearing to assess its credibility. *See United States v. Wynn*, 292 F.3d 226, 230–31 (5th Cir. 2002) (remanding for additional factfinding when petitioner's allegations were at odds with an assumption made by the district court and neither a hearing was held nor factual findings were made on those allegations); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (remanding for a hearing to determine if petitioner can establish facts in support of his allegations for equitable tolling).

8

No. 15-50206

\* \* \*

We thus VACATE the judgment and REMAND for further consideration of whether equitable tolling is appropriate. The evaluation of whether extraordinary circumstances existed should take account of the effect of those circumstances in the compressed time frame Jimenez had for filing his federal petition. *See Fisher*, 174 F.3d at 715 (noting that while a delay in receiving a piece of information was not an extraordinary circumstance in the present case, "[i]n the right circumstances, [such] a delay . . . might call for equitable tolling—such as . . . if an essential piece of information was delayed near the filing deadline"). The district court on remand can also consider in the first instance whether Jimenez exercised the diligence required for tolling.

9