United States Court of Appeals

For the Eighth Circuit

_____

No. 15-1168
_____

Paul M. Gordon

*Plaintiff - Appellant*

v.

State of Arkansas

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: January 13, 2016
Filed: May 26, 2016
_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.
_____

SMITH, Circuit Judge.

Paul M. Gordon pleaded guilty to three counts of rape of a minor child in Arkansas state court and was sentenced to 35 years' imprisonment for each count, to be served consecutively. Gordon petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that (1) he was incompetent to enter the guilty plea in state court, and (2) he was unconstitutionally confined for mental-health reasons following

his sentencing for 115 days. The district court[1] denied Gordon's petition as untimely and dismissed it with prejudice. We granted a certificate of appealability (COA) and now affirm the district court's denial of Gordon's § 2254 petition.

I. *Background*

A. *State Court Proceedings*

On August 4, 2011, Gordon pleaded guilty to three counts of rape of a minor child in Arkansas state court and was sentenced to 35 years' imprisonment for each count, to be served consecutively. The state court entered judgment on August 5, 2011.

One hundred and eighty days later, on February 1, 2012, Gordon filed in the state trial court a pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In his state petition, he claimed that (1) his counsel was ineffective for failing to properly investigate and litigate his case, (2) his counsel was ineffective for coercing him into pleading guilty, (3) he lacked mental competence to enter a valid guilty plea, and (4) he was denied a fair and impartial trial.

Rule 37 petitions are subject to a mandatory, jurisdictional 90-day filing deadline. Ark. R. Crim. P. 37.2(c)(i); *Maxwell v. State*, 767 S.W.2d 303, 304 (Ark. 1989). In his Rule 37 petition, Gordon acknowledged the untimeliness of his petition but asserted that the court should excuse the late filing because his incarceration restrictions and mental health prevented him from filing it in a timely manner.

On February 8, 2012, the state trial court initially denied the Rule 37 petition as untimely because it was filed after November 2, 2011—the 90th day after the entry of judgment on August 5, 2011. The court subsequently reconsidered its denial and

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

conducted a hearing on March 28, 2012, regarding the timeliness of the Rule 37 petition. At the hearing, Gordon contended that he was unable to file the Rule 37 petition in a timely manner because he was in the Arkansas Department of Corrections (ADC) mental health unit. He testified that he "had zero access for four months [to legal materials,] and then it was very limited . . . , with two visits a week for five to ten minutes." He stated that "gradually [he] got a paper and a flex pen but it was probably a couple of months." He maintained that he was "completely mentally unable to comprehend anything that was going on . . . from . . . December the 9th of 2010," and that he "had no possible way of doing anything in the first 90 days." According to Gordon, he was first allowed to go to the law library in December 2011 after getting off lock-down on November 30, 2011. He admitted that he had filled out the Rule 37 petition, which was notarized on January 18, 2012, and filed it on February 1, 2012. Following Gordon's testimony, the state trial court scheduled a second hearing to afford Gordon the opportunity to submit medical records in support of his argument.

At the second hearing on May 15, 2012, Gordon reiterated that he was unable to do any legal work and lacked materials for doing so for four months following his guilty plea. He testified that during that time he was on "[t]reatment[-]precaution" status. This means that he was "contained" so that he could not "hurt [himself] or anyone else." According to Gordon, he was on treatment-precaution status from August 5, 2011, to November 30, 2011. At that point, he was placed on "free status, which is actually the same unit . . . , [but] you get out of your cell into another room with other people" with fewer restrictions.

Gordon confirmed that he "had a counselor from day one" and that one of those counselors was Debra Cornelius. Gordon testified that he "didn't learn of the law library until probably a week or so before [he] got out of confinement," which was in "[t]he middle of November." He agreed that he "may" have written letters to his son during the time that he was on treatment-precaution status. When the prosecutor asked Gordon to confirm that he had, in fact, "had access to pencil and paper" during that

time period "because [Gordon] could write [his] son," Gordon replied, "I asked my counselor for something, he would, he'd bring me a couple of sheets of paper." When the prosecutor asked Gordon to confirm that his counselor would provide him with "papers, pens, forms, and things like that" when Gordon requested them, Gordon responded, "Well, he told me I could put in a request. And I did put in a request for the legal library way after I've learned of it, which I'd say middle of November."

Cornelius, Gordon's mental-health counselor at the ADC, also testified. She testified that she became Gordon's counselor sometime in November 2011 when Gordon was still on treatment-precaution status. When asked whether Gordon was capable of doing legal work during that time period, Cornelius responded that the question was beyond her expertise. When asked whether it would have been part of her job duties to assist Gordon if he "needed any legal help, any forms, access to the law library," Cornelius replied, "It would have been my duty to forward his request if he had placed a request in writing for that." Cornelius explained that inmates should have learned how to make a request to their counselors for assistance during orientation. She confirmed that she would "try to expedite any request that" an inmate makes but that Gordon never "ma[de] a request of [her] for any assistance with the law library or . . . specifically with helping him file a Rule 37 [petition]."

Gordon also introduced a set of mental-health records from the ADC. These records consisted of a series of "Condensed Health Services Encounter" (CHSE) forms. The CHSE form entered the day of Gordon's plea, August 5, 2011, reflects that Gordon "was charged in December and has had two suicide attempts by overdose just before going to county jail." It also states that Gordon "reported being in [a] psych ward and on psychotropic meds both in the hospital and in county jail." According to the CHSE form, Gordon "reported that his latest [suicide] attempt was two nights ago while in county jail, the night before his trial was to begin." Gordon "stated that he fe[lt] hopeless and depressed and [was] not sure what he ha[d] to live for since he has a long sentence." The evaluator noted on the CHSE form that Gordon appeared

-4-

"somewhat unstable at this time" and "to lack coping skills." The evaluator placed Gordon "on treatment[-]precaution status," explaining that his "mental status is hopeless at this time and he lacks barriers to suicide at this time."

Gordon introduced additional CHSE forms for August 10, August 19, September 26, November 1, November 9, November 20, and November 29, 2011. The CHSE forms reflect that Gordon struggled with depression and suicidal thoughts throughout the period but showed improvement over time with medication. The forms indicate that Gordon was not psychotic but "[r]ational and goal directed." Notably, the CHSE forms report that on September 26, 2011, Gordon had "brought up some legal questions and was referred to the Law Library" and that on November 29, 2011, Gordon's "main concern . . . [was] his want to go to the Law Library and make phone calls." Also on November 29, 2011, Cornelius described Gordon on the CHSE form as "calm and cooperative" and "not appear[ing] to be in mental health distress." She reported that Gordon "ha[d] agreed to try being off treatment precaution on free status." The following day, November 30, 2011, Gordon was removed from treatment-precaution status.

Following the second hearing, the state trial court again ruled that the Rule 37 petition was untimely, explaining:

> There were no actions taken by the prison that would have prevented the defendant from filing a timely Rule 37 [petition]. Paperwork was available at the prison and all the defendant had to do was request it. There was no time of his incarceration when the filing could not have taken place.
>
> Therefore there was no tolling of any time for the filing of the Rule 37 petition and the petition filed was not timely and the [c]ourt reaffirms it's [sic] prior order.

-5-

Gordon appealed to the Arkansas Supreme Court, and the State moved to dismiss the appeal for lack of jurisdiction based on the untimeliness of the Rule 37 petition. The Arkansas Supreme Court summarily granted the motion to dismiss the appeal on January 24, 2013.

## B. *Federal Court Proceedings*

On May 2, 2013, Gordon petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he was (1) mentally incompetent to enter the guilty plea in state court, and (2) subjected to unconstitutional conditions of confinement for 115 days following imposition of his sentence due to his mental condition.[2] Gordon sought the following relief: "Allow the Rule 37 postconviction relief petition to be presented to the courts although it was late submitted, being that timely submission was not a possibility due to conditions uncontrol[l]able by petitioner." Gordon did not attack his conviction or seek release from confinement; instead, he requested that the district court order the state to permit him to proceed with the substance of his Rule 37 petition.

In response, the State argued that Gordon's federal habeas petition was time-barred under 28 U.S.C. § 2244(d)(1)(A) and procedurally defaulted. The State, therefore, requested that the district court dismiss the petition.

The matter was referred to the magistrate judge, who issued a report and recommendation that the district court dismiss the petition with prejudice. First, the magistrate judge found that Gordon's federal habeas petition was time-barred, unless

[2]"[R]ead[ing] Gordon's pro se petition liberally," the State interpreted the claims set forth in Gordon's federal habeas petition as "the same [as the claims that] he raised in his Rule 37 proceedings—that defense counsel rendered ineffective assistance of counsel by failing to investigate his case, that he was coerced into pleading guilty, and that his plea was involuntary because he was mentally incompetent." (Citation omitted.)

some tolling provision applied. The magistrate judge reasoned that, pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitations began to run on September 4, 2011—30 days after entry of Gordon's state-court judgment. Gordon, however, did not file the instant petition until May 2, 2013—"well over one[ ]year from the date his conviction became final."

Second, the magistrate judge found that no period of statutory tolling pursuant to 28 U.S.C. § 2244(d)(2) applied because Gordon's untimely Rule 37 petition was not "properly filed" within the meaning of the statute. This was because the Rule 37 petition was untimely under state law.

Third, the magistrate judge found that no period of equitable tolling applied. The magistrate judge explained that, whatever the propriety of the state court finding Gordon's Rule 37 petition "untimely," the relevant question was whether Gordon established that he was entitled to equitable tolling with respect to his *federal* habeas petition. The magistrate judge found that although Gordon "was limited in his access to the library and writing materials," he possessed "access to writing materials and could have gained access to the law library." The magistrate judge based this finding on Cornelius's testimony that Gordon "was allowed to go to the library for limited time periods and would have been provided legal materials if he had requested such." The magistrate judge emphasized that "Gordon never asked for legal materials or access to the prison law library."

Finally, as an independent grounds for dismissal, the magistrate judge found that the claims advanced in Gordon's federal habeas petition were procedurally defaulted based on Gordon's failure to comply with a state procedural rule. The magistrate judge explained that Gordon failed to "present[] his claims to the highest courts of Arkansas, because he violated the state rule regarding the timeliness of filing

his post-conviction petition. Thus, the state has 'disposed of' his claims on an adequate and independent state procedural rule." (Citation omitted.)

The district court adopted the magistrate judge's report and recommendation and dismissed Gordon's federal habeas petition with prejudice. The district court subsequently declined to issue a COA.

Gordon then applied to this court for a COA. We granted a COA on three issues:

(1)    whether Gordon is entitled to equitable tolling based on his mental condition and conditions of confinement;

(2)    whether equitable tolling should extend to the entire time his Rule 37 petition and related appeal were pending in state court; and

(3)    whether his mental condition and conditions of confinement qualify as cause to overcome procedural default.

## II. *Discussion*

On appeal, Gordon argues that he is entitled to equitable tolling of AEDPA's one-year limitations period because his mental impairment and conditions of confinement impeded his efforts to file his postconviction petitions timely. He avers that equitable tolling should apply to the entire time that he attempted to exhaust his state-court remedies. Finally, he contends that his mental condition and conditions of confinement constitute "cause" to excuse his procedural default.

"This court has jurisdiction to review a district court's ruling on preliminary procedural issues, such as [a] limitations question [and] review[s] the district court's interpretation of the one-year AEDPA limitation provision de novo." *Walker v. Norris*,

436 F.3d 1026, 1029 (8th Cir. 2006) (alterations in original) (quotations and citations omitted).

## A. *Equitable Tolling*

We first address whether Gordon is entitled to equitable tolling based on his mental condition and conditions of confinement and, if so, whether equitable tolling should extend to the entire time that his Rule 37 petition and related appeal were pending in state court.

A one-year statute of limitations applies to habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1). "For state prisoners, the limitations period runs from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Camacho v. Hobbs*, 774 F.3d 931, 932–33 (8th Cir. 2015) (quoting 28 U.S.C. § 2244(d)(1)(A)). Gordon does not contest the district court's ruling that "[t]he one-year limitations period began to run on [September 4, 2011, 30 days after he was sentenced,] and Gordon had until September 4, 2012[,] in which to file the instant [p]etition." Because Gordon filed the instant petition on May 2, 2013, the petition is time-barred unless some tolling provision applies.[3]

"The Supreme Court has held that the limitations period set forth in '§ 2244(d) is subject to equitable tolling in appropriate cases.'" *Rues v. Denney*, 643 F.3d 618, 621 (8th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010)). "Equitable tolling . . . asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law." *Holland*, 560 U.S. at 650 (citation omitted). "[E]quitable tolling affords the otherwise time-barred petitioner an exceedingly narrow window of

---

[3]Gordon concedes "that he is not entitled to statutory tolling"; therefore, the sole issue is the applicability of equitable tolling.

relief . . . ." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001) (citation omitted). "The one-year statute of limitation may be equitably tolled 'only if [the movant] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (alteration in original) (quoting *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (quotations and citations omitted).

Here, the first question is whether Gordon has shown reasonable diligence to equitably toll the *federal timing rules* for filing his *federal habeas petition*—not his Rule 37 petition. *See id.* at 650. As previously discussed, under AEDPA, the one-year statute-of-limitations period for Gordon to file his federal habeas petition ran from September 4, 2011, to September 4, 2012. We conclude that Gordon failed to show reasonable diligence in pursuing his rights during this time period.[4] According to

_____

[4]Gordon argues that equitable tolling should apply to the entire time that he attempted to exhaust his state-court remedies. He asserts that a contrary holding would punish him for attempting to exhaust his state remedies and force him to either proceed directly to federal court and face a procedural bar or continue to diligently exhaust his state-court remedies and risk a federal court finding that his habeas corpus petition is time-barred. The Supreme Court has rejected a similar argument. *See Pace*, 544 U.S. at 416. In *Pace*, the Supreme Court held that because the petitioner filed his federal habeas petition beyond the deadline and was not entitled to statutory or equitable tolling for any of that time period, his federal petition was barred by AEDPA's statute of limitations. *Id.* at 413–19. The "petitioner challenge[d] the fairness of [the Court's] interpretation," arguing "that a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never properly filed, and thus that his federal habeas petition is time barred." *Id.* at 416 (quotations and citation omitted). The Supreme Court explained that "[a] prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are

-10-

Gordon's testimony and the documents submitted in state court—which are part of this record—Gordon was on treatment-precaution status from the date of his plea until November 30, 2011. This means that Gordon was under the more restrictive treatment-precaution conditions for only 3 months of the 12-month federal statutory filing period. As a result, Gordon was not on treatment-precaution status for 9 of the 12 months that he had to file his federal habeas petition. He has failed to explain why he was unable to diligently pursue his federal rights during this ninth-month period in which he was not in treatment-precaution status.[5] Accordingly, he cannot satisfy the two-prong test for equitable tolling. *See Muhammad*, 735 F.3d at 815.

## B. *Procedural Default*

Gordon admits that he procedurally defaulted his claims for federal habeas relief by failing to file his Rule 37 petition timely, but he argues that he has established "cause" to excuse that default. Gordon argues that his mental condition and conditions of confinement qualify as cause to overcome procedural default. According to Gordon, the same reasons justifying equitable tolling also excuse his procedural default because his failure to file his petition under Rule 37 timely was due to his mental condition and conditions of confinement. Specifically, he asserts that "the restrictions under which he was forced to operate and his physical and mental impairments during the relevant ninety (90) day time frame did, indeed 'hinder' . . . his

exhausted." *Id*. (citation omitted). According to the Court, "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id*. (citation omitted).

[5]Mental health records from the ADC show that on November 29, 2011, Gordon "d[id] not appear to be in mental health distress" and agreed to be off restrictions on "free status." Gordon's depression was treated by the ADC, and he was removed from treatment-precaution status on November 30, 2011. As to his conditions of confinement, Gordon was able to access sufficient legal materials during the nine-month period that he was not in treatment-precaution status to pursue state postconviction relief.

-11-

effort to file a timely Rule 37 petition and therefore made compliance with the ninety (90) day time limit 'impracticable.'"

> When a habeas petitioner defaults his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of his claims is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

*Morgan v. Javois*, 744 F.3d 535, 538 (8th Cir. 2013) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). "In other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citation omitted).

> "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639 (1986); *see also Cawley v. DeTella*, 71 F.3d 691, 696 (7th Cir. 1995) (depression not an external impediment). For mental illness to excuse the procedural bar arising from the failure to pursue state postconviction remedies, the petitioner must make a conclusive showing that he or she was incompetent at the time of the postconviction proceedings. *See Nachtigall v. Class*, 48 F.3d 1076, 1081 (8th Cir. 1995). To be deemed incompetent, the petitioner must have been "'suffering from a mental disease, disorder, or defect that may substantially affect his capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation.'" *Id*. (quoting *Anderson v. White*, 32 F.3d 320, 321 (8th Cir. 1994)).

*Ervin v. Delo*, 194 F.3d 908, 915 (8th Cir. 1999). "Mental illness and legal incompetence are not identical, nor are all mentally ill people legally incompetent." *Nachtigall*, 48 F.3d at 1081.

> Our cases establish that, in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief. *See Garrett v. Groose*, 99 F.3d 283, 285 (8th Cir. 1996); *Nachtigall v. Class*, 48 F.3d 1076, 1080–81 (8th Cir. 1995); *Stanley v. Lockhart*, 941 F.2d at 708–10. Mental illness prejudices a petitioner if it interferes with or impedes his or her ability to comply with state procedural requirements, such as pursuing post-conviction relief within a specific time period. *See Malone v. Vasquez*, 138 F.3d 711, 719 (8th Cir.), *cert. denied*, 525 U.S. 953, 119 S. Ct. 384, 142 L. Ed. 2d 317 (1998).

*Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999).

The relevant time period that we look to in determining whether cause exists to excuse Gordon's procedural default of his habeas claims is August 5, 2011—the date of the entry of the state-court judgment—to November 2, 2011—the 90th day after the entry of judgment on August 5, 2011. We conclude that no cause exists to excuse Gordon's procedural default.

The record evidence shows that any mental illness from which Gordon suffered during the relevant time did not impede his ability to comply with Rule 37. Gordon agreed at the state-court hearing that he "may" have written letters to his son during the time that he was on treatment-precaution status. More importantly, the CHSE forms documenting Gordon's mental health reflect that Gordon possessed a rational thought process: (1) the August 19, 2011 form provides that Gordon displayed no

-13-

disorganized thought process and characterized Gordon's "[t]hought [p]rocess" as "[r]ational and goal directed"; (2) the first September 26, 2011 form characterized Gordon's "[t]hought process" to be "[r]ational and goal directed" and described Gordon as "[a]wake, alert, and generally oriented"; (3) the second September 26, 2011 form characterized Gordon's thoughts as "logical, intact[,] and goal-directed" and reported that Gordon had "brought up some legal questions and was referred to the Law Library"; and (4) the November 1, 2011 form indicated that Gordon's "mood and affect were in the low-normal range, his thoughts appeared to be logical and intact[,] and his thought content was unremarkable."

For these reasons, we hold that no cause exists to excuse Gordon's procedural default.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____

-14-